Mr. Clerk, will you call the next case, please? 3-A-2-12-0-0-0-0-0-3-Blooms Appellant by Rodney Krepman v. OSF Healthcare System Appellant by Andrew St. Paul Good morning, Your Honors. Good morning. This is an Illinois Whistleblower Act case. It will be the second appellate court case considering the newly enacted Illinois Whistleblowers Act. The second district ruled in 2011 in Bramby City of Chicago on the facts that need to be alleged to state a claim under the Whistleblowers Act. My name is Ryan McCracken. I represent Gary Wilms, the appellant. Gary Wilms was employed as a maintenance director at OSF St. Clair Home in Peoria Heights. He was there nine years as the maintenance director, and he was in charge of minor repairs such as plumbing, heating and air conditioning, and also one of his duties was to consult and also escort Illinois Department of Public Health inspectors during their annual inspections of the home. Initially, the Illinois Department of Public Health inspector was a man by the name of C.T. Yang. He, Wilms, escorted Yang around the property during his annual inspection, and a new sidewalk was constructed around the perimeter of the home. Yang found this sidewalk was in compliance with the Illinois Department of Public Health regulations, and the inspection did not result in him issuing a report for any violations to the home. Then, in August 2008, Yang came back for another inspection, but this time when he was walking around the home, he saw the exact same sidewalk that he approved before and told Wilms that he didn't believe it complied with the slope requirements of the Illinois Department of Public Health regulations. Yang proceeded to hold his clipboard up to his face and eyeball a measurement of the slope of the sidewalk. He said, he told Wilms that the sidewalk looked about one inch too steep, and accordingly he issued an October 24, 2008 report that mandated the home comply with the regulations for the sidewalk slope. Wilms didn't believe, he didn't take him at his word for the eyeball measurement of the one inch slope. The eyeball method is a conclusive evidence of the slope? No, he decided to hire a contractor to measure the slope with a laser, and the result of that measurement was that it actually was 5-1-8 inch too steep and needed to be changed. He informed the administrator, Kelly McGrath, of the report of Yang, and then also of his laser measurement, and reminded McGrath several times of the deadline to change the slope. He did not have the authority to approve the expenditures to change the sidewalk himself. Was it his responsibility that the sidewalk was off originally? No. Okay. The person in charge of major construction, such as the sidewalk, he only had authority to spend up to $500 a month on regular maintenance around the home. There was an engineer that OSF had that had to approve and oversaw construction projects such as that. Then the sidewalk wasn't prepared. In February 2009, Yang followed up on his visit, and he came back to the home and asked Wilms if the changes had been made to the sidewalk, and Wilms truthfully told him they hadn't, and he told Inspector Yang at this time that the slope was actually 5-1-8 of an inch off. As a result of those two matters that Wilms told him, Yang issued a February 10, 2009 order directing the construction on the sidewalk to begin immediately, and the construction did not happen until two weeks later, began until two weeks later on February 25, 2009, and was completed on the 26th. Is that what you're saying, that when Yang came back in February, that that is the disclosure? The big question here seems to be that Wilms didn't disclose anything, that he had no smoking gun. Is it your argument that he is truthful with Yang who has eyeballed things or not used the best method to collaborate whether or not something he suspects? Yes, that is exactly our position. One of the things that you are entitled to under the Illinois Department of Public Health regulations and the statute  to object to certain findings by the inspector, and certainly an eyeball measurement would not be enough to sustain a violation and incur the fines that they ended up incurring. So, Wilms truthfully telling him that changes had not been made and actually informing him that the slope was 5-8 of an inch off could be used as an admission that they did not comply with his order and it actually was off, and that was the result of the fine. And Judge Dubicki ruled that the complaint did not state a claim under the Whistleblowers Act precisely because he did not voluntarily and was not the original source of the information. But the Illinois Whistleblower Act includes broad language that does not require those two specific voluntary and being the original source as requirements. The only requirement is what the employee reasonably believes is a violation of a law, rule, or regulation. But it does require a disclosure. Yes, it does. And definitionally a disclosure is something that hasn't been original, hasn't already been disclosed, hasn't already seen the light of day, if you will. I would take issue with that definition because there's also a second definition that is to make known, to communicate. Black's Law Dictionary actually defines a whistleblower as an employee who reports an employer wrongdoing. So a report of information, I would say is communicating information to somebody, and that's consistent with the purpose of the Act. The main purpose of the Act is to protect people and provide frank information and frank discussion with regulators so that they may do their job. It is different than the Illinois False Claims Act, for example, that requires specifically original source, and the General Assembly included that specific requirement in the statute, but they did not hear it. In fact, the Illinois Whistleblower Act's language is similar to the Illinois Human Rights Act, which has a retaliation provision that also somebody has to have a reasonable belief that it violates the Illinois Human Rights Act or a discriminatory purpose. For example, in a criminal investigation, based on the interpretation argued by OSF, a person that corroborates evidence in a criminal investigation would not be covered under the Act because they were not the original source and they did not voluntarily provide information. They can be terminated and have no cause of action under the Illinois Whistleblower Act. The intent of the General Assembly would not be effectuated by grafting those two requirements into the language of the statute when they're not there. And the 2nd District Appellate Court even advocated for a broad interpretation of this retaliatory statute. They said that when a plaintiff informs the mayor of the alleged misconduct by the chief in Brainerd v. City of Chicago, that that was enough. I advocate the position that providing the information by Williams when he told them the sidewalk was not changed and that it was 5 eighths of an inch off, that those were disclosures under the Whistleblower Act. I have a factual question. What exactly was the reason given for why he was fired? His handling of the inspection that resulted in the $33,600 fine. That it was just that, it didn't give any reason? There is a letter that's alleged in the complaint that the letter says you are being terminated for your mishandling of the inspection. Okay, thank you. Thank you, Mr. McCracken. Mr. McCall. Thank you, Justices. May it please the Court, Counsel, I'm Ambrose McCall here for the defendant Appley OSF Healthcare System. The pleadings, as alleged by plaintiffs, shows that Mr. Williams never blew the whistle on anyone, anything, or any policy. The Illinois Whistleblower Act requires a disclosure. That term disclosure appears throughout the act. A disclosure is a report of information not previously known or a physical act of uncovering something. Wouldn't it be previously not known to Mr. Yang when he comes, he's issued an order to say to replace something and it's an order that's binding? He asks, did you replace it? And in the termination letter it says he's being terminated because he mishandled it. That's a yes or no question. So if he disclosed yes, if he said yes, we replaced it. The factual context is key, and this is according to their own allegations, paragraph 12. Accordingly, Mr. Yang told Williams that the slope did not meet the IDPH requirements for handicap accessibility because of the alleged one-inch deviation from the regulations. That's paragraph 12. Paragraph 14, Yang prepared a report of his inspection. It required the OSF St. Clair facility to alter the slope in the sidewalk by October 24, 2008 in order to meet the department regulations. Paragraph 18, which you're referring to, Justice O'Brien, is the most they can plead, and that's, quote, Williams truthfully confirmed to Yang the sidewalk violated the regulations. But their own allegations show Mr. Yang already authored a report, already did the investigation, already found the sidewalk gradient was noncompliant. So to get back to your question as to whether or not disclosing an open and obvious view, isn't this the same sidewalk I looked at before? The answer is yes, it's the same sidewalk. Nothing has changed. That's not a disclosure. Didn't he ask them, was this replaced? Here's the presumption of that formulation of that fact that shows it's out of odds with the Act. The Act is not new. It's been in effect since 2004. The Act is to protect employees who pick up the phone or send an email or in-person visit to a governmental office and say, I think something unlawful is going on in my workplace. This is not a terse reply of yes, just confirming that, yeah, things haven't changed. It's still the same way as you were here last. That's not a disclosure. That's just a reconfirmation that nothing has changed. Is there something in the statute that requires picking up the phone or going to an office? We heard the argument that this Act is like the Illinois Human Rights Act. Nothing could be further from the truth. The Illinois Human Rights Act, it's 775 ILCS 56101. Retaliation that is covered there is because someone has opposed something, which they've reasonably believed is discrimination. Oppose this, act against, resist, come back. Nothing in that definition of opposition comes anywhere close to a disclosure in the Illinois Whistleblower Act. Here's the other reason the Illinois Whistleblower Act. Pardon? Did you answer my question? Yes, the Illinois Whistleblower Act is different. It's different because it's like the Illinois False Claims Act, which is right next to NV titles. It is not. The provision that's at issue, 15B, does require a disclosure, and it says it twice. If it's not revealing something that's unknown to somebody already, then it's not a disclosure. My question was what in the statute requires picking up the phone or going to an office? I'm just giving concrete examples. I'm sorry, Justice McDade. I'm just saying that there has to be some initiation by the employee. In other words, this is where Brame is so different. You're being told Brame versus North Chicago is just like this case. Nothing could be further from the record. In Brame, the person in the police department goes into the mayor's office and says, here are things I think the chief of police is doing that are unlawful, and starts ticking off all the things that that person thinks the chief of police is doing unlawful. That's initiating and making a complaint. It's making a disclosure. It's making a report. It's not just standing over the object that you were directed to remedy and confirming that you still haven't remedied it. That's not a disclosure. The disclosure would have been, for example, if it had occurred, which they plead it didn't, is if Mr. Williams contacted somebody and said, oh, by the way, which whatever means of contact is reasonable, by the way, did you know that the sidewalk gradient is not handicap accessible? Do you know, by the way, the sidewalk gradient doesn't comply with IDPH regulations? It's not being a passive, noncompliant, nonresponsive actor to the point where Mr. Yang has to say, well, wait a minute, nothing has changed here still. It's still the same sidewalk. How does that get twisted and contorted, a positive answer, yes, into a disclosure or report? Mr. Yang had already authored his report. He already found the sidewalk was noncompliant. Sardega also gives an idea of the statutory interpretation that's correct. Sardega v. Northern Trust Co. states that the Illinois Whistleblower Act protects employees who call attention in one of two specific ways to illegal activities carried out by their employer. It protects employees who either contact a government agency to report the activity or refuse to participate in the activity. Well, there's no refusal pled here. There's no action pled at all. Mr. Williams did nothing. So that provision. I don't know. Yes. Well, that would have been untruthful. I don't think someone becomes a whistleblower by just one word answer saying, yes, the remediation, the regulatory violation you already authored a report on still exists. The whistleblowing has to occur before then that leads to that finding in the first place. The finding had already been made. But isn't he out there to determine whether or not the order had been followed? I mean, he issued an order. He issued a report, too. He made findings. Right. He issued an order to OSF. Yes. And wasn't he there to follow up on that order, the compliance? Not just on what, I mean, his report indicates that, yes, he eyeballed it. There was an inch difference. But when he goes out there, it's to follow up with compliance. It's to confirm whether or not the compliance activity has occurred. It's not to find out whether the regulatory violation exists. He's already found that it exists. He's just finding whether or not there's been compliance activity. And as noted, the actual letter attached to the complaint says, quote, this termination is a direct result of poor performance related to the critical IDPH safety deficiency because Mr. Williams had done nothing. And as it says in the letter, it says in the letter that he gave a completion date that he was supposed to set October 24, 2008. There's nothing in the pleadings about anything that he did or didn't do. He just, there's no action other than just turning over a piece of paper. He didn't start any remedial work. There's no pleading that he tried to comply at all. And he has pleaded that those things weren't within his job description. He has not pledged that he has done one thing to comply with that finding. Nothing. All he's trying to say is give me an excuse. My excuse is somehow that's not within my order. He hasn't even fully pledged that in the termination letter, which is attached as an exhibit and not pledged as pretext, shows just the opposite, that it was within his employment responsibilities to monitor and to get things going on that and to get compliance obtained, which he didn't do. He pled that he kept notifying Ms. McGrath of the deadline. Presumably she's the one who's supposed to get the engineer going. Is he authorized to start the engineer off? Mr. Willems has not pled anything other than handing the paper off to anybody else. I understand what the court is asking. But that, going back to the original point, though, the statutory construction controls the dismissal here. There has to be a report or disclosure. And as of now, as the pleadings stand, there is no whistleblowing. To define this as whistleblowing would mean a lot is whistleblowing, whereas when one looks at the statute both in its statutory definitions of disclosed within the context of it being right next to the Illinois False Statements of Noncompliance, that doesn't qualify as whistleblowing. Whistleblowing is, again, informing a governmental agency, through a complaint or otherwise, that some alleged unlawful activity is occurring or some regulatory violation. This is not retaliation under employment law under civil rights law, where, again, that's opposition. And, frankly, these facts, as alleged, don't even qualify as opposition, which is a lower standard. They don't, because Mr. Willems never pleads that he opposed anything, any act or practice. So to twist and distort, which is happening now on appeal on the record, to try to say, well, somehow this fits within the Illinois Human Rights Act, it doesn't. Somehow it's unlike the Illinois False Claims Act. Well, it is. And somehow that not initiating contact with Mr. Yang at any time, because remember, even when he says yes, did Mr. Willems initiate that contact with Mr. Yang? Did he call up Mr. Yang and say, oh, by the way, we still don't have compliance? Did he make a report? No. He's on site, just responding in kind, and the fact that he gives a one-word answer that's not false does not transform a one-word, terse answer in response to a regulatory contact that he did not initiate into whistleblowing. There's not one point in this record where Mr. Willems engendered or initiated any action by the Illinois Department of Public Health in initiating the inspection, in making the report, in finding the violations, in finding that compliance still did exist. Mr. McCall, I fully understand your statutory construction argument. What I don't understand is what he was fired for. In the letter attached to the complaint, it says... I know what the letter says. What was he fired for? What is it that he did or didn't do that made him somehow responsible for that fine? He set the deadline of October 24, 2008. Mr. Yang did? No. No. Actually, it says in that letter, and just bear with me, Justice McDade says, quote, this termination is a direct result of poor performance related to the critical IDPH safety deficiency K038, which resulted in the facility obtaining an estimated $33,000 in lost revenue and civil money penalties due to the handicap ramp work not being completed by the plan of correction date you set, you, Mr. Willems, October 24, 2008. Mr. Willems doesn't plead that he did anything other than hand pieces of paper to other people. He doesn't plead that he got a work crew together, that he said, here's a budget, or here's my piece of paper with this order, that I'm going to get compliance done. Nothing. So... As an initial position, the position is that no whistleblowing took place. The secondary position is that somehow the court thinks this extremely thin read, if any exists, qualifies as whistleblowing. Mr. Willems is blowing the whistle on himself. Was it, in fact, his responsibility to fix it? Yes, it is within his responsibility as director of maintenance. This isn't something he can just pass off and say, well, there's an engineer up in a corporate building. Well, of course, there's always somebody up in a corporate building somewhere. But if you're head of director of maintenance of the facility, yes, this falls within your scope of job responsibilities. How is it that he inserted the date of October 24, 2008, into Yang's prepared report, inspection report on the Illinois Department of Public Regulations? I don't think he did insert it in Mr. Yang's report. Mr. Yang is his. The termination letter has that date in there. But that's what's in that report. The report requires that slope to be altered or repaired on or before October 24. But you're saying that he created that date that Mr. Willems did. How is it that he had the authority to do that through the Illinois Department? Because that sets the date upon which the fines can begin. And so you're saying that he had some authority with the Illinois Department of Public Regulations. No, no, no. He had authority within his employer to say, I want to get this done by X date. It's a deadline Mr. Willems sent internally. He said, this does not have to do with the Illinois Department of Public Regulations. So those dates are identical by coincidence? No, they're not identical by coincidence. But Mr. Willems set a deadline for himself that he never accomplished, never met. And he doesn't plead anything in here that shows what he did beyond handing the task off to other people. There's nothing in this complaint that shows what he did to concretely, substantively achieve this. Nothing. And again, as far as the Illinois... He did not have a $500 limit on what he could spend in a month. He did all of those allegations or all of those in his complaint, those are false? Justice O'Brien, I'm not saying the allegations are false because it was dismissed as a 2-6-15. What we're saying is that he's the director of maintenance. Whatever budgetary limitations he has, everybody has them. It doesn't absolve you, it doesn't excuse you from doing nothing other than just saying there's a deadline out that exists here pending it on the bulletin board and walking away. And then when the regulatory person comes and then says what's been done, nothing. So Mr. Willems can't pass that off to anybody else when it's his own inaction. Okay, thank you. Any other questions? Thank you. Mr. McCracken, any rebuttal? Thank you. The complaint does allege what his duties were and what his responsibilities were. And one of the things the complaint states is that that does not include construction. It has nothing to do with that. And actually the OSF engineer, David Falls, is responsible for that. There's one thing that I can and Willems can agree upon with OSF is that truthfully providing information does not state a claim under the Whistleblowers Act. However, firing somebody for providing that information to them is a claim under the Whistleblowers Act. McGrath also told Willems that this is either going to cost you or me a job. And McGrath, after that conversation, which is alleged in the complaint, she fired him. Mr. McCracken, you said that truthfully stating something doesn't state a claim under the Whistleblowers Act. But when they're fired for that, it does. So just by itself, truthfully providing information does not state a claim under the Whistleblowers Act. It's a disclosure, but it doesn't state a claim under the Whistleblowers Act. Firing somebody in retaliation for that disclosure, providing information to them, does violate the Whistleblowers Act. Corroboration. I'm sorry, can I answer your question? What did Willems actually do after the first notice from Yang? Willems reported to McGrath the order. He also reported the deadline that Yang put in his order. And he reminded her of the deadline. He is not responsible for making the changes or overseeing the change in the sidewalk. All he had to do was report it, and somebody else had to change the sidewalk. So what really happened here is Willems was the scapegoat for the fine that was incurred for something he didn't even have any responsibility for because he talked to the... What's alleged in the complaint? We alleged in the complaint that he didn't have that responsibility. And based on the trial court's ruling, it didn't state a claim. The responsibility wasn't an issue. Corroboration is always important in any investigation, whether it's criminal, regulatory. And corroborating a violation is something that the government needs to prosecute any violation. And saying that corroboration is not covered under the Illinois Whistleblowers Act will cause a lot of people to be not covered by the Illinois Whistleblowers Act for simply corroborating an investigation. Thank you. Thank you, Mr. McCracken. Thank you both for your argument today. We will take this matter under advisement and get back to you with a written decision.